## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

HARLAN L. RAPE,                      )
                                     )
                Plaintiff,           )
                                     )
v.                                   )   Case No. CIV-13-460-RAW-KEW
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social               )
Security Administration,             )
                                     )
                Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Harlan L. Rape (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act. Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled. For the reasons
discussed below, it is the recommendation of the undersigned that
the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 21, 1962 and was 49 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade with some special education classes. Claimant has worked in the past as a driver for a tire company, ranch hand, and electrician. Claimant alleges an inability to work

beginning June 6, 2009 due to limitations resulting from peripheral artery disease, a broken neck, partially missing collar bone, back pain, and depression.

## Procedural History

On March 15, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Osly Deramus ("ALJ") on December 6, 2011 in McAlester, Oklahoma. The ALJ issued an unfavorable decision on January 10, 2012. On August 6, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform sedentary work with restrictions.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include all of Claimant's severe impairments at step two; (2) failing to find Claimant's impairments met a listing; (3) reaching an improper RFC determination; and (4) finding Claimant could perform certain jobs at step five.

## Step Two Evaluation of Impairments

In his decision, the ALJ determined Claimant suffered from the severe impairments of peripheral artery disease status post right femoral endarterectomy and left femoropopliteal bypass, degenerative disc disease of the cervical spine with associated chronic back pain and shoulder pain bilaterally. (Tr. 26). He concluded that Claimant retained the RFC to perform sedentary work except that he can only occasionally stoop, crouch, crawl, kneel, and balance. He also can only occasionally climb stairs but never climb ladders. Claimant can occasionally reach overhead with his arms bilaterally. (Tr. 30). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of semi-conductor assembler and circuit board assembler, both of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 37-38). Based upon these findings, the ALJ concluded Claimant was not disabled from June 6, 2009 through the date of the decision.

(Tr. 38).

Claimant contends the ALJ failed to include all of her impairments at step two. Specifically, Claimant contends that ALJ should have included the additional severe impairments of depressive disorder and unspecified mental impairments.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work

6

activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from

anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper

conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also Hill v. Astrue, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted].

On July 27, 2010, Claimant underwent a mental status examination with Dr. Diane Brandmiller. Dr. Brandmiller concluded Claimant suffered from depressive disorder, NOS with a GAF of 59-68. She found his long term memory, his short term memory, concentration, and abstract thinking to be intact. Dr. Brandmiller also found Claimant's expressive and receptive language skills to be intact. He appeared to be able to understand and carry out simple instructions. He could do basic arithmetic and count change back. He would be able to manage any funds that may be awarded. (Tr. 367). Nothing in Dr. Brandmiller's assessment would warrant

the inclusion of a severe mental impairment at step two. She did not reference any limitation upon Claimant's ability to engage in basic work activity. The GAF of 59-68 is not a basis for including a severe mental impairment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)).

On March 7, 2012, Dr. Robert Spray completed an RFC Secondary to Mental Impairments on Claimant. This document was submitted to the Appeals Council but was not available to the ALJ at the time he rendered his decision. Dr. Spray found Claimant had severe impairment in the areas of relating to co-workers, interacting with supervisors, demonstrating reliability, and avoiding undue constriction of interests. Dr. Spray determined Claimant was markedly restricted in another 13 functional areas. (Tr. 444-46). He also included a Psychological Evaluation report dated March 7, 2012. The report, however, contains little clinical findings or diagnostic mental evaluation testing but rather largely just

regurgitates Claimant's subjective complaints. This Court finds no error in the rejection of this report by the Appeals Council.

## Consideration of a Listing

Claimant contends the ALJ should have considered whether he was disabled under Listing 4.12(A). To meet this Listing, Claimant must show:

> Peripheral arterial disease, as determined by appropriate medically acceptable imaging (see 4.00A3d, 4.00G2, 4.00G5, and 4.00G6), causing intermittent claudication (see 4.00G1) and one of the following:
>
> A. Resting ankle/brachial systolic blood pressure ratio of less than 0.50.
>
>             \*   \*   \*
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.12(A).

On September 29, 2010, Claimant's ratios were 0.63 on the right and 0.94 on the left. (Tr. 385). On November 12, 2010, Dr. Jerry First found Claimant's ratio to be 0.52. (Tr. 393). On December 1, 2010, Dr. First found Claimant's ratio to be 0.60 on the right and 0.84 on the left. (Tr. 398). At no time did Claimant meet this Listing. Claimant's allegation of error is without merit.

## RFC Determination

Claimant contends the ALJ should have included accommodation for his circulatory problems in his legs which he alleges precludes him from standing, walking, or sitting for long periods of time.

Claimant's circulatory problems were clear in July of 2009 when he reported to Dr. Paul Robison with bilateral lower extremity ischemia with impending gangrene. (Tr. 321). After treatment, however, Claimant was revascularized and his legs were adequately perfused. Claimant wanted to go home after two days and he was ambulating without difficulty. His wounds were healing well. Dr. Robison found Claimant "had done very well. His pulses were palpable in his feet." (Tr. 322).

On November 12, 2010, Dr. First observed that Claimant

easily comes from a reclining to sitting and sitting to standing [position]. He is able to walk five or six steps around the examining room without any difficulty or need of assistive devices. On exiting the exam he walks down the 70 foot hallway without any difficulty or need of assistive devices. His gait is normal, safe, and stable.

(Tr. 393).

Claimant also contends the ALJ should have included the limitations found by Dr. Spray. This Court has already addressed this argument. It was not error to omit those findings.

As a subset of the RFC determination, Claimant asserts the ALJ improperly evaluated his credibility. Claimant reiterates his "near-listing medical findings" which this Court has rejected. He also states that his daily activities are limited. As the ALJ noted, Claimant lived alone, cared for his personal needs, tries to eat three meals per day, occasionally sweeps, washes dishes, and on

rare occasions does laundry, shops twice a month, and drives. (Tr. 32). The ALJ noted Claimant was injured when he fell from a ladder which does not suggest Claimant's symptoms are as restrictive as Claimant alleged. (Tr. 33).

The ALJ also found inconsistencies in Claimant's testimony which reflected adversely upon his credibility. Claimant denied using illegal drugs but later testified he smoked marijuana and drank heavily for 25 years. (Tr. 33). Claimant denied abusing prescription drugs but the evidence indicated Claimant was receiving pain medication from two sources at the same time. Id. Although he testified his pain medication was not working, the treatment notes from Claimant's physician indicated the medications were working well in August of 2011. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

13

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ has sufficiently linked the objective medical evidence to his findings on Claimant's credibility. This Court attributes no error to the ALJ's assessment of Claimant's credibility.

## Step Five Evaluation

Claimant suggests that the hypothetical questioning of the vocational expert was inadequate since the ALJ's RFC was deficient. Since this Court has determined that the ALJ's RFC determination was supported by substantial evidence, the questioning which mirrored the RFC findings was appropriate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security

Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE